UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

**In re:**
    Jamie L. Shadley
      aka Jami Potter, aka Jami Matthews       Bankruptcy Case No. 10-50795

---

**Habbo G. Fokkena, United States Trustee**

      **Plaintiff.**                                  **Adv. No.**

**v.**

**Edward Jonak, dba
Affordable Law Center,
Christian Discount Attorney Services
American Lawworx**

      **Defendants**

---

**COMPLAINT FOR TURNOVER AND FINE
UNDER 11 U.S.C. § 110**

---

    1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1332. Venue is proper pursuant to 28 U.S.C. § 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The complaint arises under 11 U.S.C. §§ 110, 526, 527, and 528.

    2.    This adversary proceeding arises in the Chapter 7 case of Jami Shadley, Bankruptcy Case No. 10-50795, pending in the U.S. Bankruptcy Court for the District of Minnesota. This adversary proceeding involves the conduct of Edward Jonak d/b/a Affordable Law Center d/b/a American Lawworx, d/b/a Christian Discount Attorney Services (collectively "the Defendant") in this and other pending bankruptcy cases and bankruptcy related business practices.

1

3. The Defendant resides in the State of Minnesota at 8844 Center Avenue NE, Blaine, MN 55434.

4. The dba Affordable Law Center is not reported as a registered company in Minnesota, but the name Affordablelawcenter.com is registered with the Secretary of State in Minnesota. Affordable Law Center has an office location at 604 W. 41st Street, Hibbing, MN 55746.

5. The Defendant maintains or has maintained offices in Hibbing, Minnesota and Blaine, Minnesota and solicits business in Minnesota.

6. Upon information and belief, the Defendant is not an attorney admitted to practice before the U.S. District Court for the District of Minnesota and Affordable Legal Services is not a legal law firm nor an employer of counsel admitted to practice to the U.S. District Court for the District of Minnesota.

7. The Defendant acted as bankruptcy petition preparer for the following debtors [hereinafter Debtors will refer collectively to these individuals] in the following pending bankruptcy cases filed in the U.S. Bankruptcy Court for the District of Minnesota who are residents of Minnesota[1]:

| Name | Case No. | Trustee | Fee Paid |
|---|---|---|---|
| Kersting | 10-50379 | Brine | 467 |
| Carter | 10-50983 | Kanuit | 363 |
| Wilson | 10-50972 | Kanuit | 600 |

---

[1] There are additional bankruptcy cases where the debtors paid the Defendant for bankruptcy filing assistance. The US Trustee reserves the right to seek the repayment of any fees paid within the 12 months of filing those cases, as permitted by 11 U.S.C. §110(b)(3) or such other fines as the court may ultimately impose and/or to bring any future action for more recent cases.

| | | | |
|---|---|---|---|
| Pankiewicz | 10-51033 | Carlson | 648 |
| Mattfield | 10-51042 | Brine | 680 |
| Boutin | 10-51032 | Brine | 580 |
| Rytty | 10-50838 | Kanuit | 580 |
| Gjestvang | 10-51084 | Brine | 580 |
| Francisco | 10-51095 | Brine | 653 |
| Shadley | 10-50795 | Kanuit | 511 |
| Bushman | 10-50794 | Kanuit | 399 |
| Cavanaugh | 10-50837 | kanuit | 299 |
| Charnley | 10-51104 | Brine | 511 |
| Cohen | 10-51118 | Brine | |
| Perry | 10-35329 | Ahlgren | 511 |
| Sinn | 10-45429 | Ahlgren | |
| Smith | 10-45585 | Stoebner | 511 |
| Freeman | 10-45121 | Leonard | 511 |

8. The Defendant does business under the name Affordable Legal Center. In documents or advertising provided by debtors in their underlying bankruptcy cases, the Defendant has also used the names American Lawworx or Christian Discount Attorney Services and Paralegal Centers.

9. The Defendant advertises itself to the public under the guise of providing services to individuals desiring to file for bankruptcy.

10. Upon information and belief, the Defendant displays or displayed the sign "Affordable Legal Center" at its place of business.

11. The Defendant has a web cite at www.affordablelawcenter.com, wherein its mission is declared to be: "provide low cost legal aid to those seeking to avoid potentially costly and unnecessary legal fees." Services include "Bankruptcy Programs" and "program attorneys". The Defendant offers "a range of services from bankruptcy and credit repair to debt settlement programs at a reasonable cost to those seeking help." The Defendant offered debtors the opportunity to achieve "a low cost bankruptcy discharge" and avoid "contend[ing] with overly expensive bankruptcy fees charged by many attorneys and lawyers." *See* Ex. 1 (Copy of pages from web cite).

12. The Defendant advertises in several newspapers with representations such as: "Affordable Law Center! Bankruptcy just $ 680.! Divorce/Custody $ 530.! Civil/Criminal etc." *See* Ex. 2 (Copy of Advertisement).

13. Most of the Debtors testified or otherwise represented that they first approached the Defendant based on advertising for affordable bankruptcy services.

14. Most of the Debtors have testified or otherwise represented that they approached the Defendant for the purpose of obtaining assistance to file for bankruptcy.

15. An example of a recent Defendant contract is attached as Exhibit 3. The contract includes services for a financial legal plan of up to $580[2], which offers the following services:

- Debt review/negotiation
- Bankruptcy filing (as needed or requested)
- Post Bankruptcy credit guidance

---

[2] The fees charged have varied in 2010 greatly, from $363, $ 511, to $ 580, or up to more than $ 600 for a chapter 13 case and the contracts have varied too. Other contract examples are attached to this complaint.

4

• Social Security/Disability assistance

• 1 year Legal Plan Benefits.

[Hereinafter "Financial Plan" will refer to these services].

16. Most debtors have testified or represented that they approached the Defendant to file for bankruptcy. In general, the Defendant collects the fee, and a kit is provided to the debtor to fill out the financial information. The Debtors appear to select exemptions from a list provided. At some point, Debtors are told they will have to pay an additional $ 69 for a typist for the bankruptcy filing documents.[3] *See* Att. Ex. 4 (Copy of contract, worksheets, and exemption lists).

17. For most of the Debtors, the typist of the filing documents was Justin Jurist/Aleutian Enterprises, PO Box 284, Winter Harbon, ME 04693. Mr. Jurist discloses his services as a petition prepare in a statement attached to the Debtor's bankruptcy documents, as required by Section 110.[4]

18. The Defendant has also represented to Debtors that they will have access to a program attorney and the legal plan documents contain several references to program attorneys.

---

[3] This description is to provide a general idea of the most consistent testimony from the Debtors, who being pro se and not understanding the system, are understandably confused about the process, and who are being mislead by the Defendant as to the services. Most recently, one of the Debtors was given a copy of a "Sample" of the US Trustee's Questionnaire for Pro Se Debtors that all pro se debtors complete, which illustrated only disclosing Mr. Jurist as the party who assisted with the bankruptcy filing.

In yet a more recent case, that is not included here, the debtor testified that the defendant collected his money, referred him to Mr. Jurist, and then told the debtor he was paying the Defendant to double check Mr. Jurist's typing. More recent cases also are split on whether the payment is disclosed under # 9 of the Statement of Financial Affairs. Therefore, it appears that the Defendant switches the type of services that he is offering.

[4] The exception is Gayle Kersting whose documents were typed by Alana Strother, Atlanta Paralegal, LLC, PO Box 491663, Lawrenceville, GA 30049. Upon information and belief, Atlanta Paralegal typed documents prior to Mr. Jurist.

5

*See* Ex. 3 and 4.

19. In the Debtors' cases, no attorney has filed a Rule 2016(b) statement, which would have been required if legal services were engaged for the fee paid to the Defendant.

20. In the Debtors' cases, no debtor has disclosed that they had access to an attorney.

21. The United States Trustee was provided with a "program" attorney list at one time, but it ended up being a general list of attorneys. Of the known attorneys who are known to regularly appear in the bankruptcy court that the US Trustee spoke with, some indicated they may have accepted referrals of clients at one time and agreed to reduce their fees if the referral became a client; however, they stated they are not in any association with the Defendant, they never received a fee from the Defendant, and there was never any agreement to represent debtors in exchange for any fee paid to the Defendant.

22. The "legal plan" purportedly purchased by the Debtors and/or the purchase of the legal plan is not disclosed in any of the Debtors' schedules or statements.[5] A payment for a future "legal plan" would be an asset of the estate, and the payment for the plan potentially recoverable by a chapter 7 trustee.

23. The alleged services in the legal plan are phoney and/or legal services that the Defendant is not entitled to provide.[6]

---

[5] In three cases, Carter 10-50983, Bushman 10-50794, Gayle Kersting 0-50379, the payment to Mr. Jonak was disclosed on under # 9 of the Statement of Financial Affairs, but it was not disclosed in the other cases.

[6] Several debtors, when they testified about the services they thought they had received, did not mention the future legal plan; therefore, it does not appear to be a well understood concept. However, a few debtors indicated the plan would entitle them to future non-bankruptcy related services like criminal/civil representation or will production. It appears to be an attempt by the Defendant to avoid Section 110 and Sections 526-528. In addition, under state law governing unauthorized practice of law, the Defendant appears to be violating a criminal statute by offering said services. *See infra.*

24. The Debtors are largely persons earning less than the median income level in the State of Minnesota and have minimal assets. Several of the Debtors applied for a fee waiver in their cases, which appears to be a regular application in cases involving the Defendant, and several of those were granted. In such cases, the likelihood of an honest debtor receiving a discharge, even if pro se, is high, as there are no assets for a trustee to administer.

25. Th Debtors have been misled and deceived by the Defendant into thinking that they are receiving all of these bankruptcy related services or other services and/or the Defendant is providing all these bankruptcy related services..

### Gayle A. Kersting BK 10-50379

26. The debtor filed on March 23, 2010.

27. The debtor applied and was granted a waiver of her filing fee.

28. The debtor sought the Defendant for bankruptcy services based on an ad in the newspaper.

29. The debtor paid $ 363 for a "Bankruptcy Law Plan". *See* Ex. 5 (Contract).

30. The debtor contacted the chapter 7 trustee and US Trustee to state that the Defendant advised on her whether a refund would be part of the bankruptcy case, that the Defendant told her that the value assigned to her property on schedule B was not important, and was advised not to turnover a canoe to the trustee because the trustee would never come and get it. *See* Att. Ex. 6.

### Cheryl Carter BK 10-50983

31. The debtor filed on July 16, 2010.

32. The debtor stated she approached the Defendant to assist her with filing for bankruptcy after seeing the Defendant's sign on a building.

33. The debtor paid the Defendant $363 for a "Bankruptcy Law Plan". It appears

that she approached the Defendant in December 2009, but paid the fee in installments.

34. The documents from the Defendant list the law firm of Greg Biltz as the "Provider Law Firm". Upon information and belief, the attorney Greg Biltz was not an attorney associated with the Defendant. Mr. Biltz has stated to the Office of the US Trustee that he at one time thought that the Defendant would refer clients to him, but that he ceased his relationship in approximately December 2009. Mr. Biltz has stated he is not associated with the Defendant and does not provide assistance to debtors who engage the Defendant. Mr. Biltz also added that he has repeatedly received calls from debtors who think he represents them or who think he will answer their legal questions on account of the Defendant's representations to the debtors.

### Larry and Karmen Wilson BK 10-50972

35. The debtors filed on July 15, 2010.

36. The debtors learned about the Defendant from a newspaper advertisement.

37. The debtors testified that they paid approximately $ 600 total for both the Defendant and Justin Jurist. The amount charged by the Defendant was likely $511.

### Alan F. Pankiewicz 10-51033

38. Mr. Pankiewicz filed under chapter 13 on July 27, 2010.

39. The debtor found the Defendant, via the American Law Worx.com discount Attorney Programs & Paralegal Centers, in the phone book. *See* Ex. 7.

40. The debtor stated that he paid a total of $ 648.00.

41. No. 9 of the Statement of Financial Affairs discloses that the debtor paid Justin Jurist/Aleutian Enterprises $ 159.00.

### Robert August Mattfield BK 10-51042

41. The debtor filed for bankruptcy on July 28, 2010.

42. The debtor stated that he learned about the Defendant through a newspaper advertisement for affordable bankruptcies.

43. The debtor testified that he paid $ 680 to the Defendant and that he thought the fee was paid in exchange for bankruptcy services. He also testified that he thought he was receiving legal services from the Defendant.

### Lorna Dee Boutin BK 10-51032

44. The debtor filed for bankruptcy on July 27, 2010.

45. The debtor applied for and was granted a filing fee waiver.

46. The debtor testified that she learned about the Defendants through a newspaper advertisement for affordable bankruptcy and divorce.

47. The debtor testified that she paid the Defendant $ 580.

48. The debtor testified that the only services she received in exchange for the fee to the Defendant and the fee to Mr. Jurist was having her forms filled completed.

### Arne M. And Linda J. Rytty

49. The debtors filed on June 16, 2010.

50. The debtors paid the Defendant $ 580.

51. The chapter 7 trustee states that the debtors' case had the following deficiencies: bank account not disclosed and handgun not fully described.

### Michael C. Gjestvang BK 10-51084

52. The debtor filed on August 5, 2010.

53. The debtor applied for and was granted a waiver of the filing fee.

54. The debtor paid the Defendant $580 for a Financial Plan.

### Kim Allen and Kristi Lowellette Francisco

55. The debtors filed on August 6, 2010.

56. The debtors testified at the meeting of creditors that they saw an advertisement on a street sign.

57. The debtors testified at the meeting of creditors that they paid $653 to the Defendant because it was thought they should file chapter 13, but that they expected a $90 refund for filing for chapter 7.

58. The debtors testified that they thought in exchange for the fee someone would attend the meeting of creditors with them, but that they were told by the Defendant it would cost an additional $ 300 for an attorney to attend.

59. The debtors testified that they were not sure if the Defendant was an attorney or not.

### Jami Shadley 10-50795

60. The debtor filed on July 28, 2010.

61. The debtor applied for but was denied a waiver of the filing fee.

62. The debtor paid $ 511 for the Financial Plan.

63. The debtor testified at the meeting that she though the Defendant would process her paper work for the bankruptcy case, answer questions and provide an attorney if she needed one. She also testified that the Defendant collected her personal information, and then she sent her packet to Mr. Juris.

64. The chapter 7 trustee found the following deficiencies in the case: No bank statement with date of filing balance information, insufficient information on garnishment on SOFA, insufficient information on sale of vehicle on SOFA, $ 1400 of disposable income on schedule I.

### Albert Lee Bushman BK 10-50794

65. The debtor filed on June 8, 2010.

66. The debtor learned of the Defendant in a newspaper ad

67 The debtor cannot recall how much he paid to the Defendant

68. The debtor testified that he did not know what the Defendant did in exchange for the fee paid.

### Kevin L. Cavanaugh BK 10-50837

69. The debtor filed on June 16, 2010

70. The debtor applied to have the filing fee waived, which was granted.

71. The debtor stated that he learned about the Defendant in a newspaper ad.

72. The debtor testified that he paid $ 299 to the Defendant.

### Michaele Allen and Stephen David Charnley BK 10-51104

73. The debtors filed on August 9, 2010.

74. The debtors testified that they paid $ 511 to the Defendant and that the Defendant was going to prepare a will for them as part of the fee.

### Telaine M. Cohen BK 10-5118

75. The debtor filed on August 11, 2010.

76. The debtor applied for and was granted a waiver of her filing fee.

77. The debtor provided copies of documents provided by the Defendant and/or Aleutian Enterprises to the chapter 7 trustee, including a copy of a "Sample" of how to complete the U.S. Trustee's Questionnaire for Debtors with An Attorney. The "Sample" instructs debtors to disclose only Justin Jurist and Aleutian Enterprises as the entity who assisted the debtor with the bankruptcy case. *See* Ex. 8.

### Michelle J. and Clark A. Perry BK 10-35329

78. The debtors filed on July 21, 2009

79. The debtors applied to waive their filing fee, which the court granted.

80. The debtors purchased a Financial Plan for $ 511 from the Defendant.

### Jessica Sinn BK 10-45429

81. The debtor filed on July 20, 2010.

82. The debtor learned about the Defendant from an advertisement in a newspaper for a discounted bankruptcy.

83. The debtor paid $ 580 for a one year "Financial Plan".

### Jennifer L. Smith BK 10-45585

84. The debtor filed for bankruptcy on July 29, 2010.

85. The debtor found out about the Defendant from a newspaper ad for affordable bankruptcy.

86. The debtor testified that she paid $ 511 to the Defendant.

87. The debtor testified that she was told the Defendant was not an attorney but if she needed an attorney one would be provided.

### Thomas and Stella Freeman 10-45120

88. The Debtors filed for bankruptcy on July 8, 2010.

89. The Debtors filed an application to waive the filing fee that was denied.

90. The Debtors became aware of the Defendant from a newspaper advertisement.

91. Mr. Freeman initially testified that he had purchased a plan for future legal representation in criminal or other matters from the Defendant. Upon being asked what future legal services he thought he could receive from a non-attorney, he and his spouse changed their position and admitted to seeking bankruptcy services.

92. According to the contract, the Debtors paid $ 511 for the Financial Plan. The Debtors paid for the plan by credit card.

**Petition Preparer**

93. The Defendant is a bankruptcy petition preparer as defined in 11 U.S.C. §110(a)(1).

94. The Defendant failed to sign the Debtors' documents and print out the Defendant's name and address, as required by 11 U.S.C. § 110(b)(1)

95. The Defendant failed to provide to the Debtors written notice in compliance with rule 9009 of the Federal Rules of Bankruptcy procedure and in compliance with 11 U.S.C. §110(b)(2).

96. The Defendant failed to place an identifying number on the document as required by 11 U.S.C. § 110(c).

97. The Defendant uses the word "legal" and similar terms in its name and advertisements, in violation of 11 U.S.C. § 110(f).

98. The Defendant failed to file a declaration under penalty of perjury disclosing the fees paid by the Debtors within 12 months immediately prior to the filing of the case and any unpaid fee charged to the Debtors, in violation of 11 U.S.C. § 110(h)(2).

**Debt Relief Agency**

99. The Debtors are assisted persons as that term is defined in 11 U.S.C. § 101(3) to whom the Defendant provided bankruptcy assistance as that term is defined in 11 U.S.C. §101(4A).

100. The Defendant is a debt relief agency, as defined by 11 U.S.C. § 1101(12A).

101. The Defendant failed to perform services that the Defendant informed the Debtors it would provide in the bankruptcy cases in violation of 11 U.S.C. § 526(a)(1).

102. The Defendant caused the Debtors to make false statements in their bankruptcy documents by not disclosing the legal plan and/or for all but three of the Debtors, not disclosing

the payments to the Defendant under # 9 of the statement of financial affairs in violation of 11 U.S.C. § 526(a)(2).

103. The Defendant misrepresented to the Debtors the services that such agency could provide in violation of 11 U.S.C. § 526(a)(3)

104. The Defendant by offering credit card charges to pay its fees advised at least one of the Debtors to incur more debt to pay for the Defendant's alleged services in violation of 11 U.S.C. § 526(a)(4).

105. The Defendant engaged in a clear and consistent pattern or practice of violating 11 U.S.C. § 526.

106. The Defendant failed to provide the written notices to the Debtors under 11 U.S.C. § 527.

107. The Defendant may not have complied with 11 U.S.C. § 528(a), as several debtors have not been able to produce a copy of the contract required by that section.

108. The Defendant failed to comply with 11 U.S.C. §528(b)(2) in his advertisements.

### Unauthorized Practice of Law in Minnesota

109. The Minnesota law, a criminal misdemeanor statute, states that it is unlawful under state law to engage in the following:

> 1. **Prohibitions**. *It shall be unlawful for any person or association of persons*, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, to appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct or defend the same, except personally as a party thereto in other than a representative capacity, or, by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel, *or to prepare legal documents, or as being engaged in advertising or counseling in law or acting as attorney or counselor at law, or in furnishing to others the services of a lawyer or lawyers, or*, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services, or, for or without a fee or

> an consideration, to prepare, directly or through another, for
> another persona, firm , or corporation, any will or testamentary
> disposition or instrument of trust serving purposes similar to those
> of a will, or, for a fee or any consideration, to prepare for another
> persona, form, or corporation, any other legal document, except as
> provided in subdivision 3.

MINN. STAT. 481.02 (1) (2003) (emphasis added).

110. The Defendant's conduct violates state criminal laws governing the practice of law.

111. The Defendant's sign and advertising violates state criminal laws governing the unauthorized practice of law.

112. The Defendant's business by preparing legal documents through a third party violates state criminal law governing the unauthorized practice of law.

113. The services offered by the Defendant appear to be legal services, the offer for a fee of which violates the state criminal law governing the unauthorized practice of law.

**Colorado Action**

114. Upon information and belief, the Defendant, specifically Edward Jonak, d/b/a Christian Legal Services, along with another individual Jeanne Smith, have been enjoined in Colorado from referring the preparation of bankruptcy documents to any non-attorney or advertising that it will assist in the preparation of bankruptcy documents or advertising as a bankruptcy preparer.   The cases include: *Immond S. Hicks, Jr.*, BK 97-14999 and *Eric S. and Amber D. Pollman*, BK 01-10186.

**Count I: Violations of 11 U.S.C. § 110(h)(3)(A)**

115. Paragraphs 1-114 are incorporated herein.

116. Section 110(h)(3)(A) states that the Court shall disallow and order the immediate turnover to the trustee of any fee disclosed by the bankruptcy petition preparer if the fee is in

excess of the value of the services.

117. The fee charged by the Defendant is in excess of the value of the services rendered.

118. A petition preparer may engage in no services beyond acting as a typist.

119. The value of the typist services in the Debtors' cases was $69.00, which was paid to the typist disclosed in the Debtors' cases.

120. The Court should disallow and order the immediate turnover to the trustee or debtor of the fees charged by Defendant as being in excess of the value of the services.

### Count II: Violations of 11 U.S.C. §110(h)(3)(B)

121. Paragraphs 1-120 are incorporated herein.

122. Section 110(h)(3)(B) states that all fees charged by a bankruptcy petition preparer may be forfeited in any case wherein the bankruptcy petition preparer fails to comply with Section 110(b)(Rule 9009 statement), (c) (identifying number),or (f) (advertise with the words "legal" or similar terms".

123. The Defendant failed to comply with the requirements of Section 110(b), (c), or (f).

124. The Court should disallow and order the immediate turnover to the trustee or debtor of the fees charged by Defendant for failure to comply with Section 110(b), (c) or (f).

### Count III: Injunction

125. Paragraphs 1-129 are incorporated herein.

126. Section 110(j) authorizes the United States Trustee to bring an adversary proceeding to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer if the court finds that the

bankruptcy petition preparer has engaged in conduct in violation of Section 110 or any provision of Title 11.

127. Section 526(c)(5) authorizes the Court to enjoin a person for intentionally or negligently violating Section 526.

128. The United States Trustee requests that the Bankruptcy Court enjoin the Defendant in the District of Minnesota and enjoin the Defendant from doing one or more of the following:

- a. Engaging in any conduct in violation of 11 U.S.C. §110.
- b. Engaging in any conduct in violation of 11 U.S.C. § 526.
- c. Advertising for any services beyond as a typist in accordance with Section 110.
- d. Accepting any fees that would total in excess of $ 69 for all services, including typing and form completion.
- c. Representing to individuals that the Defendant is associated with an attorney, program attorney, or any attorney at law or representing in any way that the fee paid by the Defendant entitles an individual to access to any law firm or entitles an individual to a discount with any law firm.
- d. Representing to individuals that the Defendant provides referral services to third party entities providing credit counseling, debtor education or legal law firms.
- e. Accepting a fee from an individual in exchange for referral to a third party petition preparer, credit counselor, debtor education provided or legal law firm.
- f. Providing legal services, including advising debtors how to testify or respond to inquiries by the Court, the chapter 7 or 13 trustees, or the U.S. Trustee.

**Count IV FINES**

129. Paragraphs 1-133 are incorporated herein.

130. If the Court finds that the Defendant has violated 11 U.S.C. §110 or committed any act found to be fraudulent, unfair, or deceptive, the Court may direct the petition preparer to pay damages to the debtor– including

    A. The debtor's actual damages

    B. The greater of –

        (i) $ 2,000 or

        (ii) twice the amount paid by the debtor to the petition preparer for the petition preparers services

131. If the Court finds that the Defendant intentionally violated 11 U.S.C. §526 or engaged in a clear and consistent patter or practice of violating this section, the court may impose an appropriate civil penalty against such person.

132. If the Court makes either of the findings in paragraphs 130 and 131 in any of the Debtors' cases, the United States Trustee requests that the Court award damages commensurate with the findings.

WHEREFORE, the United States Trustee requests that the Court grant Counts I-IV and such other relief as it deems appropriate.

Dated: September 15, 2010                      HABBO G. FOKKENA
                                                  UNITED STATES TRUSTEE
                                                  REGION 12

                                        BY:    /s/ Sarah J. Wencil
                                                      Sarah J. Wencil
                                                      Trial Attorney
                                                      Office of the United States Trustee
                                                      Suite 1015 U.S. Courthouse
                                                      300 S. 4th Street
                                                      Minneapolis, MN 55415
                                                      (612) 664-5504

# VERIFICATION

       I, Sarah J. Wencil, trial attorney for the United States Trustee, named in the foregoing pleading declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Executed on:   September 15, 2010

                                       /s/ Sarah J. Wencil  
                                       Sarah J. Wencil  
                                       Trial Attorney  
                                       IA ATTY NO 14014  
                                       1015 U.S. Courthouse  
                                       300 South Fourth Street  
                                       Minneapolis, MN 55415  
                                       TELE:   (612) 664-5500  
                                       FAX:     (612) 664-5516